Peter A. Bellacosa  (PB-2394)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Of Counsel:

Linda S. Resh
Craig D. Leavell
Jared Hedman
Ramya Ravindran
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
Telephone:     (312) 861-2000
Facsimile:     (312) 861-2200

*Attorneys for Defendants*
*Research in Motion Limited and*
*Research in Motion Corporation*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EATONI ERGONOMICS, INC., <br><br>                 Plaintiff, <br><br>     v. <br><br> RESEARCH IN MOTION LIMITED and <br> RESEARCH IN MOTION CORPORATION, <br><br>               Defendants. | Case No.:  05 CV 04393 (LTS) (FM) <br><br> ECF CASE |

**MEMORANDUM IN SUPPORT OF RIM's MOTION TO DISMISS, OR IN THE**
**ALTERNATIVE TO STAY, THIS ACTION UNDER THE FIRST-TO-FILE DOCTRINE**

## Table of Contents

I.      FACTUAL BACKGROUND...........................................................................................1

II.     ARGUMENT...............................................................................................................2

    A.      Pursuant to the First-to-File Doctrine, This Suit Should Be Dismissed in Favor
        of the Earlier-Filed Texas Action .................................................................2

    B.      No Special Circumstances Exist Warranting Departure From the First-to-File
        Rule ....................................................................................................................4

        1.      The Texas Action is not an improper anticipatory filing .................................4

        2.      RIM's Texas Action was not motivated by forum shopping ..........................7

    C.      Balancing Of Convenience Does Not Overcome The Presumption Of
        Adhering To The First-To-File Rule .........................................................8

        1.      Convenience of the witnesses .................................................................9

        2.      Location of relevant documents and relative ease of access of proof.............9

        3.      Convenience of the parties .......................................................................10

        4.      Locus of operative facts .........................................................................11

        5.      Availability of process to compel attendance of unwilling witnesses ..........12

        6.      Relative means of the parties ...................................................................13

        7.      Forum's familiarity with the governing law ................................................13

        8.      Weight accorded plaintiff's choice of forum ...............................................13

        9.      Trial efficiency and the interests of justice ..................................................14

    D.      At Minimum, This Action Should Be Stayed Pending Determination by the
        Texas Court Whether to Adjudicate the Matter...........................................15

III.    CONCLUSION........................................................................................................18

Defendants Research in Motion, Ltd. and Research in Motion Corp. (collectively "RIM") hereby move this Court to dismiss, or in the alternative to stay, this case ("the New York Action") pursuant to the "first to file" doctrine. At the time Plaintiff Eatoni Ergonomics filed this case, an identical lawsuit involving the same patent, the same accused device, and the same parties was already pending in the United States District Court for the Northern District of Texas ("the Texas Action"). In such circumstances, the first-to-file doctrine mandates that the Texas Court, in the first instance, determine which case will proceed. Accordingly, as the second-filed lawsuit, this case should be dismissed in favor of the Texas Action. *See, e.g., First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (noting the "well-settled principle in this Circuit that where there are two competing lawsuits, the first suit should have priority").

## I.      FACTUAL BACKGROUND

On April 28, 2005, RIM filed a lawsuit against Eatoni in the Northern District of Texas, Dallas Division, Case No. 05 CV 0851-K, seeking a declaratory judgment that Eatoni's U.S. Patent No. 6,885,317 ("the '317 patent") is invalid and not infringed by RIM's 7100-series Blackberry devices. *See* Declaration of Craig D. Leavell in Support of RIM's Motion to Dismiss, Ex. A. RIM chose the Texas forum because its only corporate office in the United States is located in Irving, Texas.[1] *See* Declaration of Brian Rivers in Support of RIM's Motion to Dismiss ("Rivers Decl."), at ¶4. Moreover, the District of Texas is also the forum in which

---

[1] Research in Motion Limited is a Canadian corporation with its principal place of business in Waterloo, Ontario, Canada. Rivers Decl. at ¶3. Research in Motion Limited does not have offices in the United States. *Id.* Research in Motion Corporation is a wholly-owned U.S. subsidiary of RIM Ltd. *Id.* at ¶ 4.

Eatoni's CEO, Howard Gutowitz, personally made threats of infringement against RIM, in person and by e-mail. *Id.* at ¶¶ 5, 10.

On May 4, 2005, a week after RIM filed its lawsuit and notified Eatoni of the suit, Eatoni filed this action, asserting the same '317 patent and alleging infringement by the same 7100-series BlackBerry devices. *See* Docket Entry No. 1, Eatoni's New York Complaint. The New York Action is a mirror image of the Texas Action. Specifically:

- The parties in both lawsuits are identical – Research In Motion Corporation, Research In Motion Limited, and Eatoni Ergonomics, Inc.;

- The same patent is at issue in both cases – U.S. Patent No. 6,885,317;

- The same accused device is at issue in both cases – RIM's 7100 Series BlackBerry device;

- The issues to be decided are the same in both lawsuits – whether RIM's 7100-series devices infringe any valid claim of the '317 patent;

- The same discovery will be necessary in both cases, including the same documents and the same witnesses.

Simply put, the Texas Action and the New York Action concern the identical dispute between the identical parties.

## II.   ARGUMENT

### A.   Pursuant to the First-to-File Doctrine, This Suit Should Be Dismissed in Favor of the Earlier-Filed Texas Action.

It is a "well-settled principle in this Circuit that where there are two competing lawsuits, the first suit should have priority." *First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989). *See also*, *City of New York v. Exxon Corp.*, 932 F.2d 1020, (2d Cir. 1991) ("The first filed rule states that where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action unless there are special circumstances

which justify giving priority to the second action."); *Citigroup*, 97 F. Supp. 2d at 555 ("[T]he presumption is that the court which first has possession of the action decides it.")  The first-to-file rule was "developed to serve the purposes of promoting efficiency and should not be disregarded lightly." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132 (S.D.N.Y. 1994) (dismissing action since duplicative suit was previously filed in Florida).  *See also*, *Hilb Rogal & Hobbs Co. v. MacGinnitie*, No. Civ.A.3:04CV1541(JCH), 2005 WL 441509, at *4 (D. Conn. Feb. 14, 2005) ("District courts must show deference to the first filing, as such deference embodies considerations of judicial administration and conservation of resources."). Therefore, if two cases involving the same issues are pending in different federal courts, the court in which the action was first filed is presumptively the court that should decide the case.

The District of Texas also follows the first-to-file doctrine. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999); *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971).

There is no question that the Texas Action is the first-filed suit, that this case is entirely duplicative, and that for all practical purposes the two cases are identical.  In fact, Eatoni's claims in this action are compulsory counterclaims in the Texas Action, and vice versa.  *See, e.g.*, *Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003) (holding that infringement claim is compulsory counterclaim that must be asserted in accused infringer's declaratory judgment suit for noninfringement); Fed. R. Civ. P. 13(a) ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.").  Thus, as a practical matter, if both lawsuits are allowed

to continue, they will be absolutely identical after the respective counterclaims have been asserted.

**B.     No Special Circumstances Exist Warranting
        Departure From the First-to-File Rule.**

Since identical actions are currently pending in two federal district courts, the first-to-file rule dictates that this action, the second-filed action, should be dismissed in favor of the first-filed Texas Action, unless Eatoni can show that special circumstances or a balance of convenience justifies departure from this rule.   Eatoni, as the party seeking to avoid application of the first-to-file doctrine, bears the burden of showing that departure from the rule is warranted. *See*, *e.g.*, *Simmons*, 878 F.2d at 79 (dismissing case in favor of first-filed Oklahoma action since plaintiff had made no showing that would warrant a departure from the first-to-file rule); *Bon-Jour Group, Ltd. v. Elan-Polo, Inc.*, No. 96 CIV. 6705 (PKL), 1997 WL 401814, at *3 (S.D.N.Y. July 16, 1997) ("The party resisting...dismissal under the first filed rule bears the burden of providing a just exception.").

Generally, a "special circumstances" exception to the first-to-file rule only exists if the first-filed suit is considered an "improper anticipatory filing," or when forum shopping ***alone*** motivated the first-to-file plaintiff.  *See*, *e.g.*, *Schnabel v. Ramsey Quantitative Sys.*, 322 F. Supp. 2d 505, 511 (S.D.N.Y. 2004).  RIM's declaratory judgment suit was an appropriate response to Eatoni's continued threats of infringement and a proper exercise of its rights under the Declaratory Judgment Act.   Therefore, it was neither an improper anticipatory filing nor an exercise in forum shopping that would justify departure from the first-to-file rule.

**1.     The Texas Action is not an improper anticipatory filing.**

At the outset, it must be noted that the mere fact that RIM's action was for declaratory judgment does not mean that it is an improper anticipatory filing.  As courts have consistently

held, "the first filed rule has been applied in actions *regardless of whether a declaratory judgment was sought in the initial action*." *Id.* at 513 (emphasis added); *see also*, *800-Flowers*, 860 F. Supp. at 132 ("[A]n exercise of a party's right to declaratory relief does not necessarily constitute an anticipatory filing for purposes of an exception to the first filed rule."); *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 469 (S.D.N.Y. 2002) ("The fact that an action is one seeking declaratory judgment does not…necessarily mean that it is an improper anticipatory filing."). As the *800-Flowers* court noted: "Were this not the case, each time a party sought declaratory judgment in one forum, a defendant filing a second suit in a forum more favorable to defendant could always prevail under the anticipatory filing exception." 860 F. Supp. at 132.

Rather, an improper anticipatory filing occurs only when the party had *actual* notice of impending litigation and merely won the race to the courthouse. In the Second Circuit, actual notice requires a direct threat of litigation, which includes specific warnings as to deadlines and subsequent legal action. *See Schnabel*, 322 F. Supp. 2d at 511-513, *citing BuddyUSA, Inc. v. Recording Indus. Ass'n of Am., Inc.*, 21 Fed. Appx. 52, 55-56, 2001 WL 1220548, at *2-3 (2d Cir. 2001) (unpublished opinion). In *Schnabel*, the court found that the first-filed declaratory judgment suit was not an improper anticipatory filing since the communications from the other party contained "no explicit mention of a lawsuit, forum, deadline or filing date, and thus is insufficient to constitute notice of a lawsuit" under the case law of this Circuit. *Id.* at 513. RIM had the necessary, reasonable apprehension of litigation in light of Eatoni's threats of infringement, and therefore the District of Texas has subject matter jurisdiction over RIM's declaratory judgment action. However, Eatoni never specified any particular date by which it intended to file this suit in this Court, and therefore, RIM's declaratory judgment action was not

an improper anticipatory filing.  Eatoni's escalating threats of infringement and outrageous demands, while sufficient to create a justiciable controversy under the Declaratory Judgment Act, is insufficient to constitute "notice" of an impending lawsuit since no explicit mention of lawsuit, forum, deadline, or filing date was ever made.  *See 800-Flowers*, 860 F. Supp. at 132 ("A party has a right to seek declaratory judgment where a reasonable apprehension exists that if it continues an activity it will be sued by another party…A party's reasonable apprehension of a legal controversy may be sufficient to satisfy the requirement of a  justiciable controversy without rising to the level of a direct threat of imminent litigation.").

In *J. Lyons Co. Ltd. v. Republic of Tea, Inc.*, 892 F. Supp. 486 (S.D.N.Y. 1995), this Court applied the first-to-file doctrine to facts very similar to this case.  Lyons had sent cease and desist letters to the defendants alleging trademark infringement.  *Id.* at 488-490.  The defendants denied any such infringement, refused to discontinue their activities, and filed declaratory judgment suits against Lyons seeking judgment that Lyons' trademarks were not infringed and invalid.  *Id.*  Lyons subsequently filed suit for infringement in New York federal court.  *Id.*  This Court dismissed the later-filed New York infringement suit under the first-to-file doctrine and rejected the argument that the declaratory judgment actions were anticipatory filings:

> While all defendants received cease and desist letters, they did not have actual notice of litigation.  Although Lyons mentioned the possibility of legal actions, ***it did not specify any date or forum***…Each defendant responded to Lyons' cease and desist letters by denying the alleged infringement.  When no understanding was reached and Lyons continued its cease and desist letters, ***the defendants had every right to seek a definitive resolution of the issues.  The defendants appropriately filed their actions in the forum most convenient to them***.

*Id.* at 491 (emphasis added).  *See also Everest Capital*, 178 F. Supp. at 469-70 ("Given the nature, tone and duration of [the parties'] correspondence, Defendants were under a reasonable apprehension that if they continued the activity in issue, they would be sued.  Under these circumstances it was not inappropriate for them to seek a declaratory judgment.  Defendants

6

were not required to wait until their adversary should see fit to begin suit to take steps to protect their [rights].").  Accordingly, since RIM's actions were not a response to any actual notice of impending litigation specifying that Eatoni would file suit in this court at this time, it cannot be deemed an improper anticipatory filing.  This exception to the first-to-file rule, therefore, does not apply.

### 2.     RIM's Texas Action was not motivated by forum shopping.

To justify departure from the first-to-file rule on the basis of forum shopping, Eatoni must show that "forum shopping *alone* motivated the choice of the situs for the first suit."  *800-Flowers*, 860 F. Supp. at 132 (emphasis added); *see also*, *Everest Capital*, 178 F. Supp. at 469 (special circumstances justifying an exception to the first-to-file rule exists when the first suit "was *solely* the result of forum shopping") (emphasis added).  In this context, forum shopping occurs when a "suit bears only a slight connection to the forum."  *Citigroup*, 97 F. Supp. 2d at 560.  This potential exception to the first-to-file rule does not apply here.

RIM did not choose the Northern District of Texas to secure any improper advantage. RIM's corporate offices in the United States are located in that district (Irving, Texas), and the RIM employees who have been in contact with Mr. Gutowitz and who are the recipients of Mr. Gutowitz's threats are located in the Irving, Texas office.  Rivers Decl. at ¶¶ 4, 10.  The meeting between Mr. Gutowitz and RIM also took place at RIM's Irving, Texas office.  *Id.*  It cannot be argued that the Northern District of Texas has no connection to the facts of this case.  Nor can it be argued that it was improper for RIM to choose its U.S. home forum to bring this action.  *See, e.g.*, *id.* at 513-14 ("A party who appropriately files a declaratory judgment action in the forum most convenient to him to resolve a ripe legal dispute is not engaged in forum shopping.");  *Everest Capital*, 178 F. Supp. 2d at 470 ("Given that the locus of Defendants' business is in Nebraska, as are anticipated witnesses and documents relevant to the issues raised by the

7

litigation, their choice of a court in Nebraska is not indicative of improper forum shopping.").
RIM's principal place of business is located outside the United States.  Rivers Decl. at ¶3.  It,
therefore, chose the next best alternative by filing suit in the location of its U.S. corporate office.
Accordingly, there is no basis to classify the decision to file suit in Texas as improper forum
shopping, and this exception to the first-to-file rule does not apply to this case.

### C. Balancing Of Convenience Does Not Overcome The Presumption Of Adhering To The First-To-File Rule.

In order to invoke the other exception to the first-to-file rule, Eatoni must prove that a
balancing of convenience overcomes the presumption that an action should proceed in the court
where it was first filed.  *See, e.g., 800-Flowers*, 860 F. Supp. at 134; *Bon-Jour Group*, 1997 WL
401814, at *3 (rejecting argument that balancing of convenience favored second-filed suit since
opposing party had not "sufficiently established that such factors weigh in favor of recognizing
an exception to the first filed rule").  Courts in this Circuit weigh the following nine factors in
determining whether an exception to the first-to-file rule applies:

1. convenience of the witnesses
2. location of relevant documents and relative ease of access of proof
3. convenience of the parties
4. locus of operative facts
5. availability of process to compel attendance of unwilling witnesses
6. relative means of the parties
7. forum's familiarity with governing law
8. weight accorded plaintiff's choice of forum
9. trial efficiency and the interests of justice

*See 800-Flowers*, 860 F. Supp. at 133.  Eatoni must show that these factors ***favor*** proceeding in
New York over Texas.  Since Texas is presumed the appropriate forum under the first-to-file
doctrine, factors that are neutral do not justify an exception to the rule.  *See, e.g., Citigroup*, 97 F.
Supp. 2d at 561 (finding balancing of convenience did not warrant departure from first-to-file
rule since the "scales rest in equipoise as to most of the enumerated factors").  As discussed in

detail below, none of the nine factors favors New York over Texas. In fact, most factors favor Texas.

### 1. Convenience of the witnesses

This factor does not support a conclusion that New York is the more convenient forum. Although Eatoni will likely argue that none of its employees are located in Texas, this does not favor proceeding in New York, since no RIM employees relevant to this case are located in New York. Key RIM personnel who are likely to be witnesses in this case are located at RIM's Irving, Texas office, or at RIM's offices in Waterloo, Canada. This factor is therefore neutral, at best, and does not weigh in favor of departing from the first-to-file rule. *See Lyons*, 892 F. Supp. at 492 ("Because any forum will be inconvenient to either plaintiff or defendants, this factor does not overcome the presumption in favor of the first-filed forum"); *Citigroup*, 97 F. Supp. 2d at 561 (noting that since "[e]ach side maintains that its contemplated employee witnesses…reside in or around the location of their corporate headquarters," this factor favors neither forum).

Additionally, Eatoni is a small company, and it is not clear that any Eatoni witnesses other than Mr. Gutowitz will be relevant to this litigation. Several RIM witnesses will be necessary to rebut Eatoni's allegations of infringement, to prove the invalidity of the '317 patent, and to rebut Eatoni's theory of damages. On the other hand, to RIM's knowledge, Mr. Gutowitz may very well be the sole witness employed by Eatoni who will need to be deposed or who will need to testify at trial. Accordingly, the convenience of the numerous, important RIM witnesses favors dismissal of this action in favor of the Texas Action.

### 2. Location of relevant documents and relative ease of access of proof

For similar reasons, the location of documents and other evidence also favors the Texas Action. No RIM documents are located in New York. Instead, all of RIM's relevant documents and evidence are likely to be found in its Texas or Canadian offices. While Eatoni's documents

and evidence may be located in New York, it is reasonable to presume that RIM's document production, including details about the accused devices, the proper amount of any damages, and the lack of any willful infringement, will be significantly more burdensome than Eatoni's. Accused infringers' document productions are routinely more extensive than that of a patentee, and this is certainly likely to be the case in this action due to the relative sizes of the two sides.

The transfer of inconvenience from one party to the other does not justify proceeding in the second-filed court. *See Schnabel*, 322 F. Supp. 2d at 518 (finding this factor neutral since "[t]ransfer to either forum would only serve to shift the burden of access"); *S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211, 215 (S.D.N.Y. 1995) (noting that a "zero-sum exchange of burdens" does not favor proceeding in a different forum). Moreover, this factor has been found to have little weight in "today's era of photocopying, fax machines and Federal Express." *Coker v. Bank of America*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997). *See also*, *Falconwood Financial Corp. v. Griffin*, 838 F. Supp. 836, 841 (S.D.N.Y. 1993) (noting that location of documents "is not a compelling consideration when records are easily portable").

### 3. Convenience of the parties

Both Eatoni and RIM filed suit in the U.S. forum most convenient to them, and each party would therefore find it more convenient to litigate in its chosen forum. Although Eatoni may certainly find it more inconvenient to litigate in Texas rather than New York, RIM finds it equally inconvenient to litigate in New York rather than Texas. Transferring inconvenience from Eatoni to RIM is not a proper basis for departing from the first-to-file rule. *See, e.g.*, *Schnabel*, 322 F. Supp. 2d at 516 (noting that this factor is neutral "if it merely shifts the burden of inconvenience to the other party"); *Bon-Jour Group*, 1997 WL 401814, at *4 ("Both parties filed action[s] in their home forums, and thus the convenience of the parties factor is indeterminate. Accordingly, Bon-Jour has failed to show that this factor favors recognition of an

exception to the first filed rule.").   Moreover, there is no reason to suggest that Eatoni is

incapable of litigating this case in Texas.  Mr. Gutowitz has traveled to Texas to meet with RIM

without any indication that such travel caused him or his company any hardship.

Furthermore, the fact that RIM may be deemed to conduct business in New York through

its sales to New York residents does not tilt the convenience factor in favor of New York.  As the

*Citigroup* court explained in rejecting the argument that a company's mere presence in a forum

mitigates any inconvenience and warrants an exception to the first-to-file rule:

> Equally uncompelling…is City Holding's contention that Citicorp's presence in
> West Virginia through its CitiFinancial branches located in that state tempers the
> inconvenience to Citigroup of litigating in that forum or makes it somehow more
> fair to require Citigroup to litigate there.  While Citicorp may do business in the
> State of West Virginia, its presence there is not relevant to the factors at issue on
> this motion…[T]here is no indication that the mere existence of these offices will
> otherwise make litigating in West Virginia more convenient for Citigroup.
> Accordingly, the fact that Citicorp may have a greater presence in West Virginia
> than City Holding has in New York does not militate in favor of disturbing [the
> first-filed plaintiff's] choice of forum.

97 F. Supp. 2d at 563.  RIM does not even have offices in New York.  Its only connection to

New York is that some of its products have been sold to New York residents.  This fact in no

way makes litigating in New York more convenient for RIM.  Accordingly, proceeding in New

York rather than Texas merely shifts the burden of inconvenience from Eatoni to RIM, and

therefore does not justify departure from the first-to-file rule.

### 4.      Locus of operative facts

This factor also does not favor New York over Texas.  No operative facts took place in

New York.  The acts that give rise to RIM's declaratory judgment suit occurred in Texas.  Mr.

Gutowitz made his threats of infringement in person at a meeting at RIM's Irving, Texas office

and email directed to RIM personnel located in its Irving office.  Rivers Decl. at ¶¶ 5, 10.

Eatoni's allegations of infringement may include products that were sold into New York, but

since RIM sells products nationwide, including in Texas, the alleged acts of infringement are not limited to any jurisdiction. *See Lyons*, 892 F. Supp. at 492 (since claims for infringement may be brought wherever such acts occur, "that does not necessarily favor one location over another"); *FinTech Research Assocs., Inc. v. Dynagro Corp.*, No. 96 Civ. 8156, 1998 WL 148423, at *3 (S.D.N.Y. Mar. 27, 1998) (finding that when activities occurred in both districts, this factor does not favor either party).

<strong>5.      Availability of process to compel attendance of unwilling witnesses</strong>

The fifth factor, the availability of process to compel witnesses' attendance, is also neutral or favors Texas "since each district will be faced with this dilemma and none has a significant advantage over the other." *Lyons*, 892 F. Supp. at 492. *See also Everest Capital*, 178 F. Supp. 2d at 467 ("Neither party has persuasively shown that compulsory service of process for third party witnesses is likely to be more problematic in either forum. This factor therefore carries little weight."). As noted above, the likelihood of any significant number of Eatoni witnesses being necessary, or even relevant, to this case is minimal, in light of Mr. Gutowitz's apparent authority at Eatoni. To the contrary, several RIM witnesses will have relevant testimony. Moreover, there is nothing to suggest that Eatoni employees located in New York would be unwilling to appear for trial in Texas at Eatoni's request, and the rules provide the necessary mechanisms to compel testimony by any Eatoni employees. Additionally, with respect to any third-party witnesses, such witnesses are just as likely to be located in Texas, or elsewhere, as in New York, and "the ability to videotape depositions makes the non-party witness availability factor less compelling than in pre-videotape days." *Schnabel*, 322 F. Supp. 2d at 518, n.12. *See also*, *Bon-Jour Group*, 1997 WL 401814, at *3, n.3 ("Bon Jour failed to show why presentation of the testimony by deposition would be inadequate."). Accordingly, this factor favors Texas just as much, if not more, than New York.

12

### 6.   Relative means of the parties

Although RIM is a larger company than Eatoni, there is no evidence to suggest that Eatoni does not have the means to litigate this case in Texas.  In fact, Mr. Gutowitz never raised any questions or concerns about financial difficulties in traveling to Texas to meet with RIM personnel on prior occasions.   Any such suggestion at this point should be viewed with skepticism.

### 7.   Forum's familiarity with the governing law

This factor does not tip the scales in favor of proceeding with the second-filed New York Action.  Whether this case is heard in Texas, New York, or any other district court in the country, the trial judge must apply the federal patent laws as interpreted by the Court of Appeals for the Federal Circuit.  As is the case with this Court, there is no reason to question the ability of the Northern District of Texas to properly apply Federal Circuit precedent, particularly in light of Judge Kinkeade's recent and significant experience with complex patent infringement cases involving complicated areas of technology.  *See, e.g., Glenlyte Thomas Group LLC v. Lutron Elecs. Co., Inc.*, 2005 WL 839438 (N.D. Tex. 2005);  *BAE Systems Elecs. Ltd. v. Rockwell Collins, Inc.*, 2004 WL 1809811 (N.D. Tex. 2004);  *Lamps Plus, Inc. v. Dolan*, 2003 W 22435702 (N.D. Tex. 2003).   Accordingly, this factor provides no justification for departing from the first-to-file doctrine.

### 8.   Weight accorded plaintiff's choice of forum

RIM is the plaintiff in the first-filed Texas Action, and therefore its choice of forum is entitled to respect.  *See, e.g., 800-Flowers*, 860 F. Supp. at 135 ("[S]ince this Court applies these factors in reference to the first filed rule…, there is a strong presumption in favor of the forum chosen by the ***original plaintiff***.") (emphasis added); *Bon-Jour Group*, 1997 WL 401814, at *3 ("There is strong presumption in favor of the forum chosen by the original plaintiff for purposes

of interests analysis under the first filed rule.").  Since RIM properly filed its declaratory judgment suit in Texas, and because the Texas Action is the first-filed case, this factor weighs in favor of RIM, since its choice of forum should be given weight.  *See Everest Capital*, 178 F. Supp. 2d at 468 ("The weight accorded plaintiff's choice of forum favors Defendants. Defendants are entitled to the benefit of choosing their own forum because, ***although they are named as defendants in this action, for purposes of this analysis they are the true plaintiffs in interest*** because…the [first-filed] suit…was not initiated by an improper anticipatory filing.") (emphasis added).  Therefore, this factor weighs in favor of RIM and provides no justification for departing from the first-to-file rule.

### 9.     Trial efficiency and the interests of justice

The final factor, trial efficiency and the interests of justice, also favors RIM.  Judicial efficiency dictates that two identical lawsuits involving the same parties and the same issues should not both proceed.  Eatoni can (and, in fact, if it wishes to pursue infringement, must) assert its infringement claim as a compulsory counterclaim in the Texas Action, and there is no reason to doubt that the Texas court can fully and fairly adjudicate Eatoni's allegations of infringement.  Therefore, this factor also provides no basis to depart from the first-to-file rule. *See*, *e.g.*, *Bon-Jour Group*, 1997 WL 401814, at *5 ("Trial efficiency and interest of justice weigh in favor of adhering to the first filed rule…The pending action in Missouri will provide Bon Jour ample opportunity to address its complaint, and thus the interest of justice would not be prejudiced by application of the first filed rule.");  *800-Flowers*, 860 F. Supp. at 136 ("The pending action in Florida will provide the plaintiff in the instant action every opportunity to protect and vindicate the rights it sought adjudicated in the instant action.").

14

Accordingly, analysis of each of the "convenience" factors reveals no justification warranting an exception to the first-to-file rule. Therefore, this case should be dismissed in favor of the first-filed Texas Action.

**D. At Minimum, This Action Should Be Stayed Pending Determination by the Texas Court Whether to Adjudicate the Matter**

Case law in this Circuit is clear that when identical lawsuits are pending in different jurisdictions, the court in which the action was first filed has authority to determine which court should resolve the dispute. *See, e.g., Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 557, n.4 (S.D.N.Y, 2000) ("[I]t is the court in which the first-filed action was brought that should decide whether an exception to the first-filed rule applies."), *citing Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 46, n.1 (2d Cir. 1961); *Ontel Prod., Inc. v. Project Strategies Corp.*, 899 F. Supp. 2d 1144, 1150, n.9 (S.D.N.Y. 1995) ("Case law indicates that the court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies."); *Donaldson, Lufkin, & Jenrette, Inc. v. Los Angeles County*, 542 F. Supp. 1317, 1321 (S.D.N.Y. 1982) (noting that the district court hearing the first-filed action should determine whether subsequently filed action should go forward).

The Fifth Circuit is in complete agreement: "The 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999). *See also, Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should

proceed."); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971) ("Once the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed.")

Eatoni's argument that RIM's Texas Action is improper under the Declaratory Judgment Act is without merit, but in any event is an argument for the Texas Court, not this Court. *See, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, (1995) (noting that the district court has discretion to determine whether to exercise jurisdiction over a declaratory judgment suit since "the facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp").   Since the question is whether the Texas court finds sufficient basis for a declaratory judgment suit and whether, in the exercise of ***its*** discretion, it will choose to resolve the matter, these issues are properly addressed by the Texas court itself.   In fact, as discussed above, the test for determining whether an exception to the first-to-file rule exists does not include analysis by the second-filed court regarding compliance with the Declaratory Judgment Act.   *See, e.g., Schnabel*, 322 F. Supp. 2d at 511 ("[T]he first filed rule has been applied in actions ***regardless*** of whether a declaratory judgment was sought in the initial action.") (emphasis added).   Accordingly, at the very least, the Court should stay this action while the Texas Court addresses any jurisdictional challenges asserted by Eatoni in the Texas Action.

Moreover, there is no reason to doubt that jurisdiction is proper in the District of Texas. Mr. Gutowitz made repeated threats of infringement against RIM, including sending an email to RIM's Irving office with a section specifically titled "The Threat" that alleged "RIM has damaged Eatoni…[b]y willfully infringing [Eatoni's] patents in manufacturing the 7100 series of

16

devices" and demanding that RIM "cease and desist from manufacturing the 7100," "pay for past infringement," and "pay to Eatoni on a non-exclusive basis an on-going per-unit royalty." Rivers Decl. at ¶¶ 5, 9 and Tab 4 attached thereto.  This email was simply the latest in a string of communications from Mr. Gutowitz over the past several months containing threats of infringement against RIM.

On September 17, 2004, Mr. Gutowitz sent a letter to Jim Balsillie, the co-CEO of RIM, claiming that RIM "may indeed already be using our technology, however without our authorization and without paying royalties, in particular in your 7100 model series."  Rivers Decl. at ¶ 6 and Tab 1 attached thereto.  Mr. Gutowitz further stated in this letter that he believed that the 7100 device was covered by his patent rights.  *Id.*  On October 1, 2004, Mr. Gutowitz sent a letter to RIM's Irving office stating that "[m]any of the aspects of the invention…are implemented in the 7100 series devices."  Rivers Decl. at ¶7 and Tab 2 attached thereto.  Mr. Gutowitz reiterated his threats in-person at a meeting at RIM's Irving office on February 28, 2005.  Rivers Decl. at ¶ 10.  Mr. Gutowitz also stated at this meeting that he believed a "judge and jury" would agree with him.  *Id.*  On March 3, 2005, Mr. Gutowitz sent an email to RIM's Irving office stating "I do not wish in any way to limit [Eatoni's] options in the case that we can not come to amicable terms with RIM."  Rivers Decl. at ¶9 and Tab 3 attached thereto.  He further stated in this email that Eatoni did not "need to know anything except the licensing terms which [RIM] will agree to."  *Id.*  Finally, days before RIM filed the Texas Action, Eatoni escalated the threat of litigation and the level of RIM's apprehension by revealing to RIM that Eatoni had retained an attorney for this dispute.  Rivers Decl. at ¶ 11.  Up to that point in time, Eatoni's CEO, Mr. Gutowitz, had communicated directly with RIM.  However, when Eatoni's attorney contacted RIM regarding the alleged infringement of the Eatoni patent, this added yet

another layer of apprehension of litigation, and RIM felt compelled to seek a declaration of its rights.  This is particularly true because the timing of Eatoni's retention of outside counsel coincided with the issuance of Eatoni's patent.  *Id.*

Accordingly, there is no reason for this Court not to dismiss Eatoni's later-filed action. Nonetheless, if this Court decides not to dismiss Eatoni's action, it should at the very least stay this case pending confirmation by the Northern District of Texas that RIM's earlier-filed Texas Action will proceed.

## III.   CONCLUSION

For all the foregoing reasons, RIM respectfully requests this Court dismiss, or in the alternative stay, this case in favor of the first-filed Texas Action.


Dated:  May 25, 2005                                    Respectfully Submitted,

                                                        /S/ _____

                                                        Peter A. Bellacosa  (PB-2394)
                                                        KIRKLAND & ELLIS LLP
                                                        Citigroup Center
                                                        153 East 53rd Street
                                                        New York, New York  10022-4611
                                                        Telephone:     (212) 446-4800
                                                        Facsimile:     (212) 446-4900

                                                        Of Counsel:

                                                        Linda S. Resh
                                                        Craig D. Leavell
                                                        Jared Hedman
                                                        Ramya Ravindran
                                                        KIRKLAND & ELLIS LLP
                                                        200 East Randolph Drive
                                                        Chicago, Illinois  60601
                                                        Telephone:     (312) 861-2000
                                                        Facsimile:     (312) 861-2200

                                                        *Attorneys for Defendants*
                                                        *Research in Motion Limited and*
                                                        *Research in Motion Corporation*

19

Peter A. Bellacosa  (PB-2394)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900

Of Counsel:

Linda S. Resh
Craig D. Leavell
Jared Hedman
Ramya Ravindran
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
Telephone:      (312) 861-2000
Facsimile:       (312) 861-2200

*Attorneys for Defendants*
*Research in Motion Limited and*
*Research in Motion Corporation*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EATONI ERGONOMICS, INC., | |
| Plaintiff, | |
| v. | Case No.:  05 CV 04393 (LTS) (FM) |
| RESEARCH IN MOTION LIMITED and RESEARCH IN MOTION CORPORATION, | ECF CASE |
| Defendants. | |

**CERTIFICATION OF COMPLIANCE WITH INDIVIDUAL PRACTICE RULES OF**
**JUDGE LAURA TAYLOR SWAIN, PARAGRAPH 2(B)**

I, Peter A. Bellacosa, hereby certify that on May 24, 2005 counsel for Research in

Motion Limited and Research in Motion Corporation (collectively "RIM") met and conferred

with counsel for Eatoni Ergonomics, Inc. regarding RIM's Motion to Dismiss Eatoni's case

pursuant to the "first-to-file" doctrine.  Counsel for Eatoni indicated that it would oppose this

Motion.

Dated: May 24, 2005

_Peter A. Bellac_____

Peter A. Bellacosa (PB-2394)